FILED
RICHARD W. NAGEL
CLERK OF COURT

2018 MAR 26 PM 2:29

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO IDENTIFY ANY ADDITIONAL CELLULAR TELEPHONE DEVICES USED BY GARY WALKER | Case No. 1:18MJ-200<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Tyler D. Field, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the identification of any additional cellular telephone devices used by Gary WALKER which is described in Attachment A.

2.  I am a Special Agent (SA) of the Drug Enforcement Administration (DEA) and have been so employed since March 2016. I also serve as a U.S. Army Military Police Captain in the Indiana Army National Guard and have done so for over sixteen years. Prior to being employed with the DEA, I was employed as a police officer for the Town of Bridgewater, Massachusetts for over three years. I graduated from the U.S. Army Military Police School, Plymouth Police Academy, and DEA Basic Agent Academy. During these courses I received training in the investigation of offenses involving controlled substances. As a Special Agent of the DEA, my duties and responsibilities include conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. As a DEA agent, I have

participated in approximately fifteen criminal investigations seeking evidence of violations of the Federal Controlled Substances Act (Title 21, of the United States Code).

3. I am currently assigned to the Cincinnati Resident Office of the DEA. I received specialized training from the DEA, including the 18-week Basic Agent Training course. This training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and, the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. This Court has authority to issue the requested warrant under Federal Rule of Criminal Procedure Rule 41(b)(1) & (2) because the Target Cellular Device is currently believed to be located inside this district because WALKER, the user of the devices, lives in and spends majority of his time in the Cincinnati. Pursuant to Rule 41(b)(2), law enforcement may use the technique described in Attachment B outside the district provided the device is within the district when the warrant is issued.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 United States Code, Sections 841(a)(1) and 846 have been committed, are being committed, and will be committed by WALKER. There is also probable cause to believe that the

location of the Target Cellular Devices will constitute evidence of those criminal violations, including leading to the identification of other individuals who are engaged in the commission of these offenses and identifying locations where the target engages in criminal activity.

7. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. *See* 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. *See* 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

8. In October 2017 SA Phil Brown and I interviewed a cooperating defendant (CD[1]) who told us that WALKER was a source of supply for fentanyl. The CD stated that the CD had purchased fentanyl from WALKER on multiple occasions over the course of several years.

9. On November 1, 2017, United States District Judge Michael R. Barrett signed an order authorizing: the continued interception of wire communications and the initial interceptions of electronic communications send to and from phone: 917-794-0597; the initial interception of wire and electronic communications send to and from phone: 513-383-7375; and the continued roving interception of wire communications over various and changing telephones used by PENNY and

---

[1] The CD has been convicted of felony drug violations in the past and had provided information to law enforcement officers in exchange for leniency of a pending drug violation. I have been able to independently corroborate various details provided by the CD using information previously obtained during this investigation, and therefore believe that the information is reliable.

the initial interception of electronic communications over various and changing phones used by PENNY.

10. On November 20, 2017 at approximately 7:30 p.m., Anthony PENNY, using 513-383-7375, placed an intercepted telephone call to Gary WALKER, using 513-250-9507. Following is the intercepted conversation as transcribed by the monitoring agent:

| WALKER | Yeah |
|---|---|
| PENNY | What's up bro? |
| WALKER | I was calling your other phone. It's dead. You still there? |
| PENNY | Yeah just call me when you get outside. |
| WALKER | I'll be there in a few minutes. |

11. At approximately 6:59 p.m., PENNY made an outgoing call from 404-242-6629 to a third individual, which agents intercepted. Based on my training, experience, discussions with other law enforcement officers/agents, and my knowledge that PENNY was using both 404-242-6629 and 513-383-7375 around the time that PENNY was intercepted speaking with WALKER, I believe that PENNY and WALKER were discussing a third, unidentified telephone used by Anthony PENNY. I further believe that WALKER was attempting to call this unidentified telephone out of concern that wire and electronic communications to and from WALKER's telephone and/or PENNY's telephone were possibly being intercepted. According to call records for 513-250-9507, WALKER's telephone, WALKER didn't make any unanswered outgoing calls at around that time and the previous outgoing call WALKER made was at approximately 5:31 p.m. and lasted approximately 54 seconds. Consequently, I believe that WALKER used an as-yet unknown,

unidentified telephone number when attempting to contact PENNY's third, unidentified telephone number.

12. At approximately 8:59 p.m., WALKER, using 513-250-9507, placed an intercepted telephone call to PENNY on 513-383-7375. During the call, WALKER told PENNY that he was "outside." According to the GPS tracker placed on PENNY's vehicle, PENNY's vehicle was located in the area of 8285 Pippin Road, Cincinnati, Ohio, PENNY's residence. Consequently, I believe that WALKER met with PENNY at PENNY's residence.

13. At approximately 9:11 p.m., PENNY's vehicle departed the area of 8285 Pippin Road and travelled to the area of 1123 Clearbrook Drive, Cincinnati, Ohio, arriving at approximately 9:25 p.m. At approximately 9:39 p.m., PENNY's vehicle departed the area of 1123 Clearbrook Drive and travelled to the area of 2822 Lawndale Avenue, arriving at approximately 9:52 p.m. At approximately 11:06 p.m., PENNY's vehicle departed the area of 2822 Lawndale Avenue and travelled to the area of 8285 Pippin Road, arriving at approximately 11:25 p.m.

14. On November 17, 2017, United States Magistrate Judge Stephanie K. Bowman, authorized and signed a search warrant for 2822 Lawndale Avenue, Apartment 3. On November 21, 2017, DEA agents and Cincinnati Police Officers executed a search warrant at 2822 Lawndale Avenue, Apartment 3, Cincinnati, Ohio. Officers seized approximately 6.76 kilograms of fentanyl mixture and approximately 1.44 kilograms of cocaine as well as scales, a kilogram-type press and associated press parts, face masks, gloves, and other drug packaging materials. PENNY was also later arrested in the area of 2822 Lawndale Avenue.

15. Beginning on November 22, 2017, at approximately 8:38 p.m. through November 28, 2017 at approximately 1:09 p.m., T-Mobile attempted to acquire court-authorized location information

for WALKER's telephone number 513-250-9507 but was not successful. Consequently, I determined that WALKER stopped using 513-250-9507.

16. Based on my training, experience, discussions with other law enforcement officers/agents, the information provided by the CD, my belief that WALKER and PENNY discussed an unidentified telephone used by PENNY, my belief that WALKER met with PENNY at PENNY's residence, my knowledge that PENNY's vehicle later travelled to the area of 2822 Lawndale Avenue on November 20, 2017, and my knowledge that PENNY used 2822 Lawndale Avenue, Apartment 3 as a stash location, I believe that WALKER was PENNY's source of supply.

17. On November 28, 2017, I reviewed call records for eight of the most frequent callers on 513-250-9507 and determined that six of these callers began calling 513-915-4332 on or around November 23, 2017. On December 5, 2017, I obtained subscriber records for 513-915-4332 and learned that the telephone number was subscribed to "Johnny English" on November 22, 2017. Based on my training, experience, discussions with other law enforcement officers/agents, my knowledge that PENNY was arrested on November 21, 2017, my knowledge that WALKER subsequently stopped using 513-250-9507, and my knowledge that 513-915-4332 used subscribed the day after PENNY's arrest, I believe that WALKER replaced 513-250-9507 with 513-915-4332 and did so in order to avoid detection from law enforcement.

18. On December 20, 2017, the Honorable Karen L. Litkovitz, United States Magistrate Court Judge in the Southern District of Ohio, signed a search warrant authorizing the use of a cell-site simulator to identify the cellular devices used by Gary WALKER. On December 26, 2017, I executed that search warrant and the cell-site simulator identified IMSI's associated with telephone

number 513-915-4332, WALKER's telephone number, and 513-746-9503, a number subscribed to Latoya CRAWFORD-Walker, WALKER's wife.

19. On March 12, 2018, United States District Court Judge Timothy S. Black signed an order authorizing the initial interception of wire and electronic communications sent to and from telephone number 513-915-4332. Interceptions began that same day.

20. On March 22, 2018 at approximately, an unidentified male, using telephone number 937-279-7920 (UM7920) placed an intercepted telephone call to WALKER on 513-915-4332. During the call, UM7920 said that he tried to call WALKER a couple of times on WALKER's other phone number. WALKER asked UM7920 when he tried to call and UM7920 said about 8 a.m. or 8:30 a.m. but the call was answered by voicemail. I reviewed the calls to and from 513-915-4332 to 937-279-7920 on March 22, 2018 and determined that WALKER didn't receive any telephone calls from 937-279-7920 on March 22, 2018 prior to the above described call. Consequently, I believe that UM7920 and WALKER were discussing WALKER possessing an additional telephone number.

21. Based on my training, experience, discussions with other law enforcement officers/agents, my belief that WALKER was PENNY's source of supply for heroin/fentanyl and cocaine, and my belief that UM7920 and WALKER were discussing WALKER possessing an additional telephone number, I believe that WALKER uses unidentified telephone numbers in furtherance of a fentanyl and cocaine trafficking conspiracy. Based on my belief that WALKER replaced his telephone number after PENNY's arrest, I believe that WALKER replaces telephone numbers to avoid detection from law enforcement. Consequently, I believe that the information provided by the

requested warrant will assist in the physical surveillance of WALKER, identification of all cellular telephones he is using, and will likely lead to other co-conspirators.

## MANNER OF EXECUTION

22. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

23. To facilitate execution of this warrant, law enforcement may use an investigative device that sends signals to nearby cellular devices, including the Target Cellular Device, and in reply, the nearby cellular devices will broadcast signals that include their unique identifiers. The investigative device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell to communicate with others. Law enforcement will use this investigative device when they have reason to believe that **Gary WALKER** is present. Law enforcement will collect the identifiers emitted by cellular devices in the immediate vicinity of the Target Cellular Device when the subject is in multiple locations and/or multiple times at a common location and use this information to identify the Target Cellular Device, as only the Target Cellular Device's unique identifiers will be present in all or nearly all locations. Once investigators ascertain the identity of the Target Cellular Device, they will cease using the investigative technique. Because there is probable cause to determine the identity of the Target Cellular Device, there is probable cause to use the investigative technique described by the warrant to determine the identity of the Target Cellular Device.

24. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

## AUTHORIZATION REQUEST

25. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

26. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior,

notify confederates, and/or flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Device outside of daytime hours.

28. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

29. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

_____
Tyler D. Field
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this 26 day of March, 2018.

_____
UNITED STATES MAGISTRATE JUDGE
HONORABLE STEPHANIE K. BOWMAN

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location and identification of cellular devices used by Gary WALKER.

## ATTACHMENT B

Pursuant to an investigation Gary WALKER for a violation of 21 United States Code, Sections 841(a)(1) and 846, this Warrant authorizes officers and special agents of the DEA and FBI to determine the location and identification of the cellular devices identified in Attachment A by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and
2. radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night.

This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).